UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

---

| | | |
|---|---|---|
| SECURITIES EXCHANGE COMMISSION | ) | Civ. No. 4:12-CV-00505 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| THOMAS D. COLDICUTT, JR. | ) | |
| ELIZABETH L. COLDICUTT | ) | |
| ROBERT C. WEAVER, JR. | ) | |
| CHRISTOPHER C. GREENWOOD | ) | |
| LINDA S. FARRELL | ) | |
| SUSANA GOMEZ | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

---

## ANSWER

Defendants Thomas D. Coldicutt, Jr., Elizabeth L. Coldicutt, Robert C. Weaver, Jr., Christopher C. Greenwood, Linda S. Farrell, and Susana Gomez file the following Answer in response to the Complaint of Plaintiff Securities and Exchange Commission in this civil action.  Unless otherwise stated, each responsive paragraph is made on behalf of all Defendants.

1.  The Defendants deny the allegations of paragraph 1 of the Complaint.

2.  The Defendants deny the allegations of paragraph 2 of the Complaint.

3.  The Defendants admit that Linda Farrell, Christopher Greenwood, and Robert Weaver incorporated certain companies as alleged in paragraph 3 of the Complaint. They further admit that on some occasions Tom Coldicutt or Elizabeth Coldicutt made loans to friends which the friends then used to capitalize companies or in turn lent to

friends to invest in the companies.  They admit that Claridge & Associates made profits in some but not all cases where it acted as a finder for public companies seeking to sell themselves after unsuccessful mining explorations, but they deny that those profits were anywhere near what the SEC alleges.  They admit that in some instances Tom Coldicutt gave a referral to a broker-dealer to companies listed in the Complaint which sought to be listed on the OTCBB.  They deny that the companies identified in the Complaint by the SEC were "Coldicutt Companies" and the remaining allegations in paragraph 3.

4.  In response to the allegations of paragraph 4 of the Complaint, the Defendants admit that Linda Farrell, Susana Gomez, Christopher Greenwood and Robert Weaver lacked prior experience in managing a mining company at the time they founded or, in the case of Defendant Gomez, became associated with a mining company.  Defendants Weaver and Greenwood did, however, have some knowledge of geology and mining.  They further admit that Defendants Gomez and Farrell lacked prior experience in the securities industry.  The Defendants otherwise deny the allegations of paragraph 4.

5.  The Defendants deny the allegations of paragraph 5 of the Complaint.

6.  The Defendants admit the allegations of paragraph 6 of the Complaint.

7.  The Defendants admit the allegations of paragraph 7 of the Complaint.

8.  The Defendants admit that certain of the companies referred to in the Complaint used the services of Signature Stock Transfer, Inc. in Collin County, Texas, as alleged in paragraph 8 of the Complaint.  The Defendants deny that that trivial association is sufficient to make venue proper in this district.

9.  The Defendants admit the allegations of paragraph 9 of the Complaint.

10.   The Defendants admit the allegations of paragraph 10 of the Complaint.

11.   The Defendants admit the allegations of paragraph 11 of the Complaint.

12.   The Defendants admit the allegations of paragraph 12 of the Complaint with the correction that Greenwood is 34 and now resides in Rancho Mirage, California.

13.   The Defendants admit the allegations of paragraph 13 of the Complaint

14.   The Defendants admit the allegations of paragraph 14 of the Complaint with the correction that Gomez has provided services to the Coldicutts through her housekeeping and catering businesses .

15.   The Defendants admit that Tom and Elizabeth Coldicutt have previously worked in securities industry, as alleged in paragraph 15 of the Complaint.  They deny the remaining allegations of paragraph 15.

16.   The Defendants admit the allegations of paragraph 16 of the Complaint.

17.   The Defendants deny the allegation in paragraph 17 of the Complaint that Tom Coldicutt held a Series 27 license and deny that he was a principal of Burnett, Grey & Co. from 1991 through 1993.  They otherwise admit the allegations of paragraph 17.

18.   The Defendants deny the allegation in paragraph 18 of the Complaint that Elizabeth Coldicutt was a registered representative associated with FCN Financial Services, which was not a broker-dealer. They otherwise admit the allegations of paragraph 18.

19.   The Defendants admit that a default judgment enjoining violations of Sections 5(a) and 5(c) of the Securities Act of 1933 was entered against the Coldicutts

3

in 1992, as alleged in paragraph 19 of the Complaint, due to malpractice by their attorney.  They otherwise deny the allegations of paragraph 19.

20.  The Defendants admit the allegations of paragraph 20 of the Complaint.

21.  The Defendants admit the allegations of paragraph 21 of the Complaint except that they deny there was anything "purported" about their working in other fields.

22.  The Defendants admit that Tom and Elizabeth Coldicutt have that degree of knowledge about the federal securities laws and taking a company through the SEC registration process which a working broker would ordinarily have, to the extent paragraph 22 of the Complaint is alleging this.  To the extent the Complaint is alleging some degree of expertise beyond that, the Defendants deny the allegation.

23.  The Defendants deny the allegations of paragraph 23 of the Complaint.

24.  The Defendants deny the allegations of paragraph 24 of the Complaint.

25.  The Defendants admit the following allegations made in paragraph 25 of the Complaint: that Tom Coldicutt or Elizabeth Coldicutt in some instances made loans which the principals of the companies named in the Complaint used to capitalize those companies; that Tom Coldicutt or Elizabeth Coldicutt made recommendations to the some of the principals of the companies named in the Complaint, at their request, on professionals such as geologists, bookkeepers, and auditors; that Elizabeth Coldicutt reviewed certain SEC filings for her friends who were principals of Saguaro, Mesquite, and Sienna and possibly for Los Rocas, her son's company, at their request; that Tom Coldicutt or Elizabeth Coldicutt in some instances made loans to principals of companies listed in the Complaint, and that those principals used part of the loans in some instances to in turn make loans to their investors; and that Tom Coldicutt, through

4

his company Claridge, acted as a finder in introducing companies listed in the Complaint to buyers and that he received substantial compensation in most cases for doing so. The Defendants deny all the allegations of paragraph 25 to the extent not specifically admitted.

26.   The Defendants deny the allegations of paragraph 26 of the Complaint.

27.   The Defendants admit that Mesquite Mining was incorporated in October 2007 by a friend of Elizabeth Coldicutt's, as alleged in paragraph 27 of the Complaint. They otherwise deny the allegations of paragraph 27, including the allegation here and elsewhere that anyone was a "nominee."

28.   The Defendants admit that Elizabeth Coldicutt made a loan to her friend of $15,000, in response to the friend's request, which the friend used to capitalize Mesquite.  This was one of a number of loans Elizabeth Coldicutt has made to this same friend.  Defendants deny any implication in paragraph 28 that Elizabeth Coldicutt directed the establishment or capitalization of Mesquite or the characterization of her friend as a "nominee."

29.   The Defendants admit that White Castle in fact is a film production company, as alleged in paragraph 29 of the Complaint.  They otherwise deny the allegations of paragraph 29, including the word "purports."

30.   The Defendants admit the allegations of paragraph 30 of the Complaint.

31.   The Defendants are unable to admit or deny that the Mesquite Form S-1 is "nearly identical" to other unidentified registrations statements, as alleged in paragraph 31 of the Complaint, because of vagueness and ambiguity and, accordingly, deny the

allegation.  They admit that the S-1 makes no mention of Elizabeth Coldicutt but deny any implication of her involvement in the Company, as alleged in paragraph 31.

32.  The Defendants admit that the Mesquite Form S-1 correctly identified Elizabeth Coldicutt's friend as the company's sole officer and director and correctly described Mesquite as an exploration stage mining company, as alleged in paragraph 32 of the Complaint.  They admit that her friend had no previous mining experience, as fully disclosed in the Form S-1.  They deny that anyone was a nominee and the other allegations of paragraph 32.

33.  The Defendants admit that Elizabeth Coldicutt made a personal loan to her friend of $15,000, as alleged in paragraph 33 of the Complaint.  They further admit that the Mesquite Form S-1 correctly states that the friend paid $15,000 for the company's stock as initial funding.  They otherwise deny the allegations of paragraph 33, including any implications that the friend was a nominee or that the Form S-1 was false.

34.  The Defendants admit, as alleged in paragraph 34 of the Complaint, that Mesquite's principal obtained a mining claim and engaged Lawrence Sookochoff as Mesquite's geologist.  They deny these were recommendations of Elizabeth Coldicutt. They admit that Sookochoff acted as geologist for several other public companies which the SEC has listed in its Complaint.  They further admit that Mesquite and the other public mining companies featured in the SEC's Complaint abandoned their explorations after adverse reports from geologists and that the companies were later sold, often a considerable time after the public offerings. They otherwise deny the allegations of paragraph 34, including any implication that anyone was a nominee.

35.  The Defendants admit the allegations of paragraph 35 of the Complaint.

36.   The Defendants deny the allegations of paragraph 36 of the Complaint except that they admit that Defendant Gomez introduced the 17 Mexican investors in the Mesquite offering to Mesquite's principal.

37.   The Defendants deny the allegations of paragraph 37 of the Complaint.

38.   The Defendants admit that Mesquite filed certain Forms 10-Q and 10-K with the SEC on the dates stated in paragraph 38 of the Complaint.  They deny the allegations in paragraph 38 that the reports were false and misleading

39.   The Defendants admit the allegation in paragraph 39 of the Complaint that Elizabeth Coldicutt's friend signed Mesquite's periodic reports referenced in paragraph 38 of the Complaint. They deny the remaining allegations of paragraph 39, including any implication that anyone was a nominee.

40.   The Defendants deny the allegations of paragraph 40 of the Complaint.

41.   The Defendants admit that Mesquite's third quarter 2008 contained the statements that Mesquite was currently conducting mineral exploration activities and that it was in discussions with its geologist.  They deny that there was anything false or misleading about these characterizations in light of contemporaneous discussions with the geologist.

42.   The Defendants admit that Mesquite abandoned its efforts to pursue mining on its claim after the claim proved not to be commercially feasible, as alleged in paragraph 42 of the Complaint.  They otherwise deny the allegations of paragraph 42

43.   The Defendants deny the allegations of paragraph 43 of the Complaint except that they admit that Claridge paid $33,750 to Elizabeth Coldicutt's friend and $57,517 to White Castle.

44.   The Defendants deny the allegations of paragraph 44 of the Complaint.

45.   The Defendants deny the allegations of paragraph 45 of the Complaint.

46.   The Defendants admit the allegations in the first clause of paragraph 46 of the Complaint about how long Weaver has practiced law and known Tom Coldicutt, but they deny the remaining allegations of paragraph 46.

47.   The Defendants deny the allegations of paragraph 47 of the Complaint.

48.   The Defendants admit that Defendant Weaver, who is a securities attorney, authored opinion letters, acted as securities counsel, prepared or reviewed reports, and acted as an escrow agent for certain public companies referred to by the SEC in the Complaint.  They deny that any such companies were "Coldicutt Companies," that there was a scheme, and the other allegations in paragraph 48 of the Complaint.

49.   The Defendants admit that certain companies referred to by the SEC in the Complaint were in fact formed to pursue mining claims, not "purportedly formed," and that they were later sold to third parties after exploration activities showed them not to have commercial potential.  They deny that any such companies were "Coldicutt Companies" and the other allegations in paragraph 49 of the Complaint.

50.   The Defendants deny the allegations of paragraph 50 of the Complaint.

51.   The Defendants admit the allegations of paragraph 51 of the Complaint.

52.   The Defendants admit the allegations of in the first sentence of paragraph 52 of the Complaint.  They further admit that the Centaurus Form SB-2 correctly stated that it was a mining exploration company.  They further admit that Weaver lacked mining experience, as specifically disclosed in the Form SB-2.  They otherwise deny the allegations of paragraph 52.

8

53.   The Defendants admit the allegations of paragraph 53 that there were 29 (not 40) investors in Centaurus, that 11 were Mexicans introduced by Gomez, and that some, but not all, received loans.  They deny that none received stock certificates.

54.   The Defendants admit the allegations of in the first sentence of paragraph 54 of the Complaint.  They deny the remainder of the allegations in paragraph 54.

55.   The Defendants deny the allegations of in the first sentence of paragraph 55.  They admit that Centaurus was sold for $225,000 in May 2009 but deny that Tom Coldicutt negotiated the sale.  They admit Claridge received a finder's fee but deny the amounts alleged by the SEC.  They otherwise deny the allegations of paragraph 55.

56.   Defendants admit that Farrell has worked for Tom Coldicutt since 2000 and has been an executive assistant for Claridge since 2002, as alleged in paragraph 57 of the Complaint.  They othewise deny the allegations of paragraph 57.

57.   Defendants admit that Farrell: (1) purchased money orders for friends who invested in a handful of instances; (2) assisted and advised her sister and her friend, at their request, with subscription agreements, registration  documents, and periodic reports for Laredo Mining and Wolfe Creek Mining; and (3) communicated with transfer agents for Rite Time, Laredo, and possibly Wolfe Creek, as alleged in part in paragraph 57 of the Complaint.  They otherwise deny the allegations of paragraph 57, including the existence of any "scheme".

58.   Defendants admit that Farrell was a principal of Rite Time Mining.  They deny the characterization of her in paragraph 58 of the Complaint as a "corporate nominee" and the reference to a "Coldicutt Company."

9

59.   The Defendants deny that Farrell was "working under Tom Coldicutt's direction" in connection with Rite Time but admit the remaining allegations of paragraph 59 of the Complaint.

60.   The Defendants deny the allegations of the first and third sentence of paragraph 60 of the Complaint.  They admit that Rite Time's registration statement correctly made the statements alleged in the second sentence of paragraph 60 but deny any implication that such statements were false.

61.   The Defendants admit that Farrell signed Forms 10Q for Rite Time on the dates stated in paragraph 61 of the Complaint but otherwise deny the allegations of that paragraph.

62.   The Defendants admit that Farrell borrowed the funds to capitalize Rite Time from Tom Coldicutt and that she in turn made loans to some of the investors, as alleged in part in paragraph 62 of the Complaint.  They deny the remaining allegations of paragraph 62.

63.   The Defendants admit that Rite Time changed its name to Federal Sports & Entertainment, Inc., in April 2008, as alleged in paragraph 63 of the Complaint, while denying the SEC's adjectives.  They also admit that Rite Time abandoned its mining plans, announcing the change in a Form 10QSB in July 2008, after receiving a report from McLeod, but deny that Tom Coldicutt or Claridge recommended or paid for McLeod's services.

64.   The Defendants deny that there were any such thing as "Coldicutt Companies," as alleged in paragraph 64 of the Complaint.  They admit that Sookochoff and McLeod were engaged to provide geological reports for multiple companies listed in

the Complaint.  They are without sufficient information to admit or deny the remaining allegations of paragraph 64 and, accordingly, deny them.

65.  The Defendants admit the allegations of paragraph 65 of the complaint.

66.  The Defendants admit that Claridge received a finder's fee as alleged, very generally, in paragraph 66 of the Complaint, but they deny the specific numbers alleged or that it or Tom Coldicutt negotiated anything.  They deny all other allegations of Paragraph 66.

67.  The Defendants admit that Linda Farrell was an executive assistant with Claridge and a director of Rite Time, as alleged in paragraph 67 of the Complaint.  They deny that she was a nominee.  They admit that her sister and a friend of hers were officers and directors of Laredo Mining, Inc., and Wolfe Creek Mining, Inc., respectively, as further alleged in paragraph 67.  They deny that these persons were nominees, that Farrell recruited them, and all other allegations of paragraph 67.

68. The Defendants admit that Claridge received the majority of the proceeds from the sale of Rite Time, as alleged in paragraph 68 of the complaint.  They otherwise deny the allegations of paragraph 68.

69.  The Defendants admit that Christopher Greenwood is Elizabeth Coldicutt's son from a previous marriage and that he had no formal mining experience prior to his involvement in Las Rocas Mining Corp. although he had some geological education.  They admit that at the time he operated Los Rocas, he was a bookkeeper.

70.  The Defendants deny that there were any such thing as "Coldicutt Companies," as alleged in paragraph 70 of the Complaint.  They admit that Greenwood later acted as a bookkeeper for Mesquite Mining and Saguaro Resources at the request

11

of their respective principals, both of whom he knew and both of whom had invested in Las Rocas.

71. The Defendants admit that Greenwood is a part owner of Greenwood Capital LLC, as alleged in paragraph 71 of the Complaint. They admit that Greenwood Capital received and forwarded funds from the sale of Las Rocas and that it received a payment in connection with a loan to Red Sun. They deny the remaining allegations of paragraph 71.

72. The Defendants admit that a friend of Chris Greenwood's was an officer and director of Red Sun Mining, Inc., and that Red Sun was sold in July 2009, as alleged in paragraph 72 of the Complaint. They deny that Red Sun's president was a nominee or "recruited," that there were any "Coldicutt companies," and the remaining allegations of paragraph 72.

73. Defendants admit that Chris Greenwood incorporated Los Rocas Mining, Inc., in September 2006, that he was its sole officer and director, and that he initially capitalized it with $5,000 although this was not the full amount he capitalized it with. They otherwise deny the allegations of paragraph 73.

74. The Defendants admit that Greenwood filed a Form SB-2 for Las Rocas in March 2007 and that he sold the offering to *his* relatives, who by the laws or consanguinity were also the relatives of Elizabeth Coldicutt, his mother, to family friends who he had known for more than a decade, to school friends, and to three friends of his mother's, whom he had known several years. The Defendants deny the remaining allegations of paragraph 74.

12

75.   The Defendants admit the first clause of the first sentence of paragraph 75 of the Complaint, stating that Chris Greenwood signed certain Forms 10-Q for Los Rocas during the time period stated. They otherwise deny the allegations of paragraph 75.

76.   The Defendants admit that Las Rocas was sold in or about October 2007 for $760,000, as alleged in paragraph 76 of the Complaint.  They deny the remaining allegations of paragraph 76.

77.   The Defendants admit the allegations of paragraph 77 of the Complaint except for the allegation that there were "Coldicutt Companies," which they deny, and as to the characterization of Gomez as a "part-time housekeeper."  She owned a cleaning service.

78.   The Defendants admit that Gomez introduced investors from her church in Tijuana, totalling somewhat less than 200, to various companies singled out by the SEC in the Complaint, as alleged in paragraph 78.  They deny the allegations that there were "Coldicutt Companies," or that Gomez simply "provided names" of Mexican investors.

79.   The Defendants admit the allegations of paragraph 79 of the Complaint except for the allegations that there were "Coldicutt Companies," or that Gomez simply "provided names" of Mexican investors, which they deny.

80.   The Defendants deny the allegations of paragraph 80 of the Complaint

81.   The Defendants admit the allegations of paragraph 81 of the Complaint except for the allegation that there were "Coldicutt Companies" or that Gomez was "scouting" for investors, which they deny.

82.   The Defendants admit the first clause of the first sentence of paragraph 82 of the Complaint, stating that Gomez signed, certified, and filed certain Forms 10-Q and

13

10-K for Wollemi during the time period stated. They otherwise deny the allegations of paragraph 82.

83.  The Defendants deny the characterization in paragraph 83 of the geological exploration results as "promising" as of the time of sale in that the allegations misleadingly omit intervening events between the initial report and a sale six months later.  They further deny the remaining allegations of paragraph 83.

84.  The Defendants are without sufficient information to admit or deny the allegations of paragraph 84 of the Complaint without an itemization of the payments referenced.  Weaver, Elizabeth Coldicutt and Tom Coldicutt had numerous business and personal dealings with Gomez over the course of 20 years.  Accordingly, they deny the allegations.

85.  The Defendants admit that the public companies listed in paragraph 85 of the Complaint were formed on the dates listed and, after adverse geological reports, were sold on the dates indicated for the amounts indicated.  They admit that they companies were formed to pursue mining opportunities, while denying any implication that this was a sham.  They admit that Weaver, Farrell, Greenwood and Gomez were involved as principals with certain of the companies listed.  They otherwise deny the allegations of paragraph 85.

86.  Paragraph 86 of the Complaint incorporates the allegations of previous paragraphs by reference.  The Defendants incorporate their responses to those allegations.

87.  The Defendants deny the allegations of paragraph 87 of the Complaint.

88.  The Defendants deny the allegations of paragraph 88 of the Complaint.

14

89.  Paragraph 89 of the Complaint incorporates the allegations of previous paragraphs by reference.  The Defendants incorporate their responses to those allegations.

90.  The Defendants deny the allegations of paragraph 90 of the Complaint.

91.  The Defendants deny the allegations of paragraph 91of the Complaint.

92.  Paragraph 92 of the Complaint incorporates the allegations of previous paragraphs by reference.  The Defendants incorporate their responses to those allegations.

93.  The Defendants deny the allegations of paragraph 93 of the Complaint.

94.  The Defendants deny the allegations of paragraph 94 of the Complaint.

95.  Paragraph 95 of the Complaint incorporates the allegations of previous paragraphs by reference.  The Defendants incorporate their responses to those allegations.

96.  The Defendants deny the allegations of paragraph 96 of the Complaint.

97.  The Defendants deny the allegations of paragraph 97 of the Complaint.

98.  Paragraph 98 of the Complaint incorporates the allegations of previous paragraphs by reference.  The Defendants incorporate their responses to those allegations.

99.  The Defendants deny the allegations of paragraph 99 of the Complaint.

100.  The Defendants deny the allegations of paragraph 100 of the Complaint.

101.  The Defendants deny the allegations of paragraph 101 of the Complaint.

102.  Paragraph 102 of the Complaint incorporates the allegations of previous paragraphs by reference.  The Defendants incorporate their responses to those allegations.

103.  The Defendants deny the allegations of paragraph 103 of the Complaint.

104.  The Defendants deny the allegations of paragraph 104 of the Complaint.

105.  The Defendants deny the allegations of paragraph 105 of the Complaint.

106.  Paragraph 106 of the Complaint incorporates the allegations of previous paragraphs by reference.  The Defendants incorporate their responses to those allegations.

107.  The Defendants admit the allegations of paragraph 107 of the Complaint.

108.  The Defendants deny the allegations of paragraph 108 of the Complaint.

109.  The Defendants deny the allegations of paragraph 109 of the Complaint.

110.  The Defendants admit that Weaver, Farrell and Gomez were officers or directors of public companies referred to in the Complaint and that they signed certain annual and quarterly reports filed with the SEC in that capacity as alleged in paragraph 110 of the Complaint.  They deny that they were nominees, that there were any "Coldicutt Companies," and that any reports filed were false and misleading, as also alleged in paragraph 110.

111.  The Defendants deny the allegations of paragraph 111 of the Complaint.

112.  Paragraph 112 of the Complaint incorporates the allegations of previous paragraphs by reference.  The Defendants incorporate their responses to those allegations.

113.  The Defendants admit the allegations of paragraph 113 of the Complaint.

16

114.   The Defendants admit that Greenwood was an officer and director of Las Rocas and that he signed and filed periodic reports with the SEC in that capacity, as alleged in paragraph 114 of the Complaint.  They deny that he was a nominee, that there were any "Coldicutt Companies," and that any reports filed were false and misleading, as also alleged in paragraph 114.

115.   The Defendants deny the allegations of paragraph 115 of the Complaint.

116.   The Defendants deny the allegations of paragraph 116 of the Complaint.

117.   Paragraph 117 of the Complaint incorporates the allegations of previous paragraphs by reference.  The Defendants incorporate their responses to those allegations.

118.   The Defendants admit the allegations in the first sentence of paragraph 118 of the Complaint except for the vague reference to "the conduct describe above," which they deny.  They deny the allegations in the second sentence of paragraph 118

119.   The Defendants deny the allegations of paragraph 119 of the Complaint.


WHEREFORE, the Defendants ask this Court enter a judgment in their favor, that the SEC take nothing, and that the Court to award the Defendants legal costs in accordance with applicable federal law provided for the benefit of defendants unjustly accused.

Respectfully submitted,


 /s/ John Courtade
John Courtade
Texas Bar No. 04891200
4408 Spicewood Springs Road
Austin, Texas 78759
tel. 512-502-1135
fax: 512-502-1138
e-mail: johncourtade@johncourtade.com
Attorney-in-charge for Defendants

Dated: October 19, 2012

## CERTIFICATE OF SERVICE

I hereby certify that on October 19, 2012, I caused this Answer to be served on counsel for the Plaintiff by filing a copy of this motion with the Clerk for the U.S. District Court, Eastern District of Texas, through the ECF filing system.


 /s/ John Courtade
John Courtade