UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | |
|---|---|
| SECURITIES EXCHANGE COMMISSION<br><br>Plaintiff,<br><br>v.<br><br>THOMAS D. COLDICUTT, JR.<br>ELIZABETH L. COLDICUTT<br>ROBERT C. WEAVER, JR.<br>CHRISTOPHER C. GREENWOOD<br>LINDA S. FARRELL<br>SUSANA GOMEZ<br><br>Defendants. | Civ. No. 4:12-CV-00505 |

### DEFENDANTS' MOTION AND MEMORANDUM IN SUPPORT OF MOTION TO TRANSFER VENUE IN THE INTERESTS OF JUSTICE UNDER 28 § 1404(a)

### MOTION TO TRANSFER VENUE

Defendants Thomas D. Coldicutt, Jr., Elizabeth L. Coldicutt, Robert C. Weaver, Jr., Christopher C. Greenwood, Linda S. Farrell, and Susana Gomez respectfully move the Court to transfer this case to the Central District of California under 28 U.S.C. § 1404(a).  The SEC filed this case in the Eastern District of Texas, where no parties, including the SEC, and no significant witnesses reside, on the basis of a trivial connection between certain companies about which the SEC is complaining and a transfer agent based in Plano.  Of the roughly 420 investors in the fifteen companies of which the SEC complains, almost all of the U.S. investors in reside in Southern California, and a large number of Mexican investors also reside in Tijuana.  Only two are found in Texas.

In weighing a motion under 28 U.S.C. § 1404(a), the Court must balance both public and private interest factors to determine whether the defendant can show that there is another district where venue is both proper and clearly more convenient. Because four of the Defendants, Thomas Coldicutt, Elizabeth Coldicutt, Christopher Greenwood, and Linda Farrell, reside in or near Rancho Mirage, California, which is in the Central District of California, there is no question that this action might have been brought in that district. This Court has enumerated the factors to consider in deciding whether to transfer venue under Section 1404(a) only two years ago in *SEC v. Rizvi*, 2010 U.S. Dist. LEXIS 74528 (Magistrate Judge's Report), *aff'd* 2010 U.S. Dist. LEXIS 74531 (E.D. Tex. 2010). The Defendants discuss below in the supporting memorandum those private and public interest factors as they apply to the facts of this case, including the location of documents, witnessess subject to subpoena power in the respective districts, the convenience of voluntary witnesses, the respective hardships (or lack thereof) for the SEC if the case is transferred and the Defendants if it is not transferred, and the local interests of the respective courts in adjudicating the matter.

The reasons to transfer this case are more compelling than those in *Rizvi*, in which this Court transferred another SEC case filed by its Fort Worth Office to Los Angeles. Los Angeles is clearly a more convenient forum for this case. We refer the Court to the Defendants' supporting memorandum, below, which details these points at length, and to the supporting Declarations of John Courtade, Irving M. Einhorn, Elizabeth Coldicutt, and Susana Gomez. Accordingly, we respectfully urge the Court to enter an order transferring this case to the Central District of California, Los Angeles Division.

## MEMORANDUM IN SUPPORT OF MOTION TO TRANSFER VENUE

The SEC filed this case in this district, where no parties and no significant witnesses reside, on the basis of a trivial connection between certain companies about which the SEC is complaining and a transfer agent based in Plano. Venue is based on Section 22(a) of the Securities Act of 1933 and Section 27(a) of the Securities Exchange Act of 1934. 1/ No issues are in dispute with respect to this transfer agent, and the Defendants' use of the transfer agent was an administrative act in no way material to the claims of fraud alleged. The only significant function of a transfer agent with regard to these companies was to issue and cancel certificates to reflect changes in ownership of the companies' stock on shareholder ledger 2/ This is an administrative function which companies can carry out internally, as most used to do

---

1/ Securities Act § 22(a) provides:

> Any such suit or action may be brought in the district wherein the defendant is found or is an inhabitant or transacts business, or in the district where the offer or sale took place, if the defendant participated therein, and process in such cases may be served in any other district of which the defendant is an inhabitant or wherever the defendant may be found.

Securities Exchange Act § 27(a) provides:

> Any criminal proceeding may be brought in the district wherein any act or transaction constituting the violation occurred. Any suit or action to enforce any liability or duty created by this title or rules and regulations thereunder, or to enjoin any violation of such title or rules and regulations, may be brought in any such district or in the district wherein the defendant is found or is an inhabitant or transacts business, and process in such cases may be served in any other district of which the defendant is an inhabitant or wherever the defendant may be found.

2/ See the SEC's description of a transfer agent's functions at http://www.sec.gov/answers/transferagent.htm.

and a minority still do today. 3/ As the Fifth Circuit and this Court have held, the jurisdictional act necessary to uphold venue under the federal securities laws must be "of material importance to the consummation of the scheme." *Hilgeman v. National Insurance Company of America*, 547 F.2d 298, 301 (5th Cir. 1977). The use of a transfer agent clearly is not.

However, although it's not alleged in the Complaint, our obligation to the Court requires us to point out that among the hundreds of investors in the fifteen or more companies attacked by the SEC as frauds, there were two in Las Rocas Mining who reside in Tyler, Texas, within this District. 4/ This Court has previously held that contacting any investor in any district in the country to solicit a purchase in that district is sufficient to support venue under Section 27(a). *SEC v. Rizvi*, 2010 U.S. Dist. LEXIS 74528 (Magistrate Judge's Report), *aff'd* 2010 U.S. Dist. LEXIS 74531 (E.D. Tex. 2010). Accordingly, we do not challenge venue based on two investors in one company out of more than 400 investors in fifteen companies alleged to constitute a grand scheme.

Under the same authority in *Risvi*, however, the appropriateness of transferring this case to Los Angeles pursuant to a Section 1404(a) motion is compelling. Trying the case in this district, where not a single likely witness resides, would be a gross imposition on the six defendants and all of the potential nonparty witnesses. The

---

3/  The Exchange Act itself recognizes in its definition of "transfer agent" that an issuer may act as its own transfer agent. Securities Exchange Act § 3(a)(25) [15 U.S.C. § 78(c)(a)(25)].

4/  Adam Wood and Jennifer Wood, Christopher Greenwood's first cousin and his wife, were investors in Las Rocas and lived in Lewisville, Texas at the time of their investment. They now live in Tyler, Texas.

convenience of the parties and witnesses and interests of justice strongly support transferring this case to the Central District of California. The primary difference between this case and *Rizvi*, in which this Court also transferred an SEC case to Los Angeles, is that the facts supporting transferring venue are far stronger in this case, as discussed below.

## I. OVERVIEW OF THE CASE

The SEC has alleged an extensive conspiracy involving at least fifteen public companies 5/, all with different principals, different investors in each company (there are a handful overlapping), and different professionals advising them to a substantial degree, all supposedly orchestrated and controlled by Defendants Thomas and Elizabeth Coldicutt. In fact, there are more companies than this involved since the SEC cherry-picked companies to fit its thesis, ignoring other public companies established by family relations, friends, and friends of friends of the Coldicutts. All of the Defendants live in Southern California, as do the overwhelming majority of witnesses. A number of the investors, whom the SEC incorrectly alleges were sham purchasers and/or received nothing for their shares, live in Tijuana, Mexico. None of the witnesses and only two of the more than 400 investors live in Texas to the best of our knowledge, as detailed in the supporting Declaration of Elizabeth Coldicutt ("Coldicutt Declaration"). The SEC's thesis is that all of these companies were surreptitiously controlled by Thomas and

---

5/   The Complaint makes allegations about Bomps Mining, Inc., Canusa Capital Corp., Centaurus Resources Corp., Green Star Mining, Inc., Laredo Mining, Inc., Las Rocas Mining Corp., Mesquite Mining Inc., Mondas Minerals Corp., Red Sun Mining, Inc., Rite Time Mining, Inc., Saguaro Resources, Inc., Sienna Resources, Inc., Wilson Creek Mining Corp., Wolfe Creek Mining, Inc., and Wollemi Mining Corporation

Elizabeth Coldicutt and that they were sham companies registered by nominees who never intended to engage in mining activities. Its theory is that Thomas Coldicutt formed the companies solely for the purpose of selling them as shells and that this was not disclosed. All of its claims of fraud and misstatements in SEC filings are premised on this theory.

## II. VENUE SHOULD BE TRANSFERRED TO THE CENTRAL DISTRICT OF CALIFORNIA IN THE INTERESTS OF JUSTICE

28 U.S.C. § 1404(a) provides:

> For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought.

Because four of the Defendants, Thomas Coldicutt, Elizabeth Coldicutt, Christopher Greenwood, and Linda Farrell, reside in or near Rancho Mirage, California, which is in the Central District of California, there is no question that this action might have been brought in that district. 6/ The only question is whether this Court should send it to Los Angeles after balancing all of the interests of parties, witnesses, and the courts.

This Court enumerated the private and public interest factors to consider in deciding whether to transfer venue in *Rizvi*, citing *In re Volkswagen of America, Inc.*, 545 F.3d 304, 315 (5th Cir. 2008) (en banc):

> The private interest factors include (1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; (4) all other practical problems that make trial of a case easy, expeditious and inexpensive. The public interest factors include (1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home;

---

6/ The other two defendants, Robert Weaver and Susana Gomez, reside in the San Diego area, in the Southern District of California.

(3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws or in the application of foreign law. *Id.* These factors are not exhaustive or exclusive, and no single factor is dispositive. *Id.*

*Rizvi, supra,* *18.

### A. The Private Interest Factors

The first private interest factor under the test articulated by the Fifth Circuit is the relative ease of access to sources of proof, i.e., the location of documents and physical evidence. The only documents that we are aware of in this district are the transfer records for some but not all of fifteen companies impugned by the SEC. These records should be very minimal: the names, addresses, dates and share purchases for typically 25 or 30 investors for each those companies serviced by the transfer agent. None of these records is subject to any dispute that we're aware of. Almost everything else in the case except for SEC filings, which are available online through EDGAR and can be printed at any computer terminal, is located in Southern California. Any records that Thomas and Elizabeth Coldicutt have are located at their home and office. Coldicutt Declaration ¶ 7. With the exceptions of Wollemi, Wilson Creek, and Canusa, companies named by the SEC with a foreign owner and a U.S. officer, all of the other companies per their filings were owned by a sole principal (prior to the public offering), who was also the sole officer. 7/

---

7/ Of the fifteen companies named by the SEC as part of the fraud, the principals for three are based in the San Diego area, one in Los Angeles, one in Irvine, five in the Palm Springs area (including Rancho Mirage), and one between Los Angeles and Palm Springs (Redlands). The others are in Oregon, Idaho, Washington State and England. To the extent that three of the companies enumerated above had foreign owners but U.S. officers, any operations would have been in the San Diego and Palm Springs areas. See Courtade Declaration

The records for those companies will necessarily be where the principals work and reside. To the extent three companies were foreign owned but used Defendant Gomez as an officer in two instances and Janet Janes as an officer of the third company, any records accessible to U.S. process will also be with Gomez or Janes. Eleven of the principals or U.S. officers reside and work in Southern California. Four other principals reside in Oregon, Washington State, Idaho, and the U.K., which locations which don't affect the analysis in either direction. See Courtade Declaration ¶ 8. Any records from the many professionals involved will be located in Southern California or in a few other states or Canada (see auditors, attorneys and geologists listed in Courtade Declaration ¶ 8), but none are in the Eastern District of Texas.

As the Fifth Circuit held in *Volkswagen, supra,* 545 F.3d at 316, the physical location of documents is less significant than it once was in light of technology, but the location of sources of proof remains a meaningful factor in the transfer analysis. In this case, the documents are mostly in Southern California, and only a trivial quantity is in the Eastern District of Texas. This factor weighs in favor of transfer.

The second factor is the availability of compulsory process over non-party witnesses. The number of possible witnesses subject to such process in the Eastern District of Texas are precisely two investors in Los Rocas, but there is no reason to suppose that they will be called as witnesses. 8/ The number of investors in the Central District number approximately 125. Coldicutt Declaration ¶ 5. We have listed in

---

¶ 8 listing defendants, witnesses, and locations.

8/ The Defendants do not anticipate wasting any court's time making the SEC prove up the authenticity of transfer records.

the Courtade Declaration two investor witnesses in the Central District, Peter Ardelian and Gregoria Cardenas, because they in turn involved other family and friends in Mesquite and Los Rocas, respectively. There would certainly be others among the 125 sufficient to rebut the SEC's assertions, but we have yet to identify them. Some additional number in the San Diego area may be subject to a Los Angeles court's 100 mile subpoena range depending on how far north of San Diego they live.

In addition, there are fifteen companies the SEC has alleged are shams. It has named a principal or officer of five of these companies as a defendant. Of the remaining 10 companies, principals for four of those companies and an officer for the fifth reside in the Central District of California. They are: Julie Carter (Sienna); Beverly Frederick (Mesquite); Nancy Farrell (Laredo), Janet Janes (Canusa); Matt Taylor (Red Sun). See Courtade Declaration ¶ 8. These are key witnesses since the question of their independence goes to the core of the SEC's allegations. There are no key witnesses in the Eastern District of Texas. This factor weighs in favor of transfer.

The third factor is the cost of attending for willing witnesses. We have set forth above and in the Courtade and Coldicutt Declarations the location of three kinds of witnesses: investors, principals and officers of the companies alleged by the SEC to be shams, and professionals whose services these companies used. The overwhelming majority of these witnesses reside in Southern California, either the Central or Southern District, and in the case of investors, also Tijuana. Of those not in Southern California or Northern Mexico, most are in the Pacific Northwest, British Columbia, or Europe. None can be compelled to testify in the Eastern District of Texas, and it is unlikely that any or, in the rosiest possible scenario for the Defendants, more than a handful would

travel 1,400 miles to Sherman to testify. As she states in her Declaration, Susana Gomez, who was the point of contact for the Mexican investors, has so far contacted five Mexican investors, three of whom said they were willing to testify in Los Angeles but that Sherman was an impossibility. Gomez Declaration ¶ 5. She anticipates that she will be able to find further witnesses who would make themselves available in Los Angeles. *Id.* It strains credulity, however, to think that an average Mexican in Tijuana could miss work and incur the expense of coming to Sherman for a trial.

The unlikelihood of non-party witnesses traveling to a trial half-way across the country is to a large extent simply common sense. This Court stated what is obvious in analyzing this factor in *Rizvi*:

> In *Volkswagen II,* the Fifth Circuit noted that "[a]dditional distance means additional travel time; additional travel time increases the probability for meal and lodging expenses; and additional travel time with overnight stays increases the time which these fact witnesses must be away from their regular employment." *Volkswagen II, 545 F.3d at 317* (quotation marks omitted). Because it "generally becomes more inconvenient and costly for witnesses to attend trial the further they are away from home," the Fifth Circuit established the "100-mile" rule. *In re Genentech, Inc., 566 F.3d at 1343*. The Fifth Circuit instructed that "when the distance between an existing venue for trial of a matter and a proposed venue...is more than 100 miles, the factor of inconvenience to witnesses increases in direct relationship to the additional distance to be traveled." *Volkswagen II, 545 F.3d at 317*.

*Rizvi*, *supra, \*28-29.*

Keeping the trial in Sherman greatly burdens the Defendants in their ability to present third party witnesses on their behalf. One difference between this case and the facts of *Rizvi* is that in this case there is no balancing of inconvenience to witnesses. Unless the SEC believes that it gains some advantage from calling as hostile witnesses the two relatives of Defendant Greenwood who are residents of this District, there are

no witnesses at all for whom Sherman is more convenient. If it does think that is a good idea, it's a balance of the convenience of two witnesses versus the convenience of hundreds of potential witnesses. Even for the witnesses in the Pacific Northwest and British Columbia, it is more convenient to fly to Los Angeles than DFW. This factor weighs strongly in favor of transfer.

The fourth factor comprises all other practical problems. The Court must consider the inconvenience to the SEC of transferring the case versus the inconvenience to the Defendants in keeping it here. The SEC is a large government agency with a large budget. As set forth in the Einhorn Declaration, it has a major office in Los Angeles, as well as in Fort Worth, which we note is not in this District. The courthouse is only a few miles away from the SEC's office in Los Angeles while it is about 90 miles from its office in Fort Worth. Einhorn Declaration ¶ 6. While the Court in *Rizvi* weighed as a factor the administrative inconvenience to the SEC in transferring the case to Los Angeles with possibly different personnel assigned to it than conducted the investigation and litigation to that point, we do not believe that to be a serious factor here for the reasons set forth in the Courtade and Einhorn Declarations.

Both of the Defendants' counsel worked in SEC enforcement for many years and are fully familiar with its operations. The SEC's enforcement side separates investigation and litigation administratively. The investigation component is much bigger than the litigation component because many or most cases settle prior to or immediately after filing. When a case goes to litigation, it is transferred from the attorneys who conducted the investigation to separate attorneys who litigate it. Sometimes the investigating attorney participates in the litigation but usually he or she does not.

Einhorn Declaration ¶ 5; Courtade Declaration ¶ 5. In this case, the attorneys who participated in the investigation are not involved in the litigation. Einhorn Declaration ¶¶ 2-5; Courtade Declaration ¶¶ 2-5. While the SEC attorneys assigned to this case undoubtedly reviewed the facts sufficiently to satisfy their Rule 11 obligations, they have no time invested in the lengthy SEC investigation which preceded this lawsuit to the best of our knowledge, and the lawsuit is in its infancy. In *Rizvi*, by contrast, it appears that the litigation had already been underway eight months before the Plaintiff filed a change of venue motion. Accordingly, there would be little administrative burden in assigning the case to the Los Angeles Office of the SEC or, as is a very common practice, the SEC's Fort Worth attorneys using the Los Angeles Office as their base while trying the case. Courtade Declaration ¶ 7.

By contrast, the detriment to at least three of the Defendants would be severe. As set forth in the Gomez Declaration, Ms. Gomez runs a housekeeping and catering business, employing others. A trial in Los Angeles would strain her business, but a trial in Sherman would force her to shut it down. Gomez Declaration ¶ 2. It would also make it that much more difficult for her to care for her 13 year old son, who has a serious medical condition. *Id.* She is the sole support of her two sons, she has no savings, she is in great financial distress, having lost her home, and a trial in Texas would wipe her out financially because she could not keep her business running. Gomez Declaration ¶ 3.

Defendants Greenwood and Farrell have not put in declarations, but it is not disputed that Greenwood is a young accountant and Farrell an executive assistant, as the SEC has alleged in substance in the Complaint. These are not people who could

easily deal with the loss of income or out-of-pocket expenses from a trial 1400 miles away.

This is another instance where the balance of inconvenience favors the Defendants much more strongly than it did in *Rizvi*. This factor weighs in favor of transfer.

      B.    The Public Interest Factors

The only public interest factor of significance in this case is the local interest in deciding the case in California. We are not aware of any court administrative difficulties in either the Central District of California or the Eastern District of Texas, we assume all federal courts to be familiar with the federal securities laws, and there are no conflict of laws or foreign law issues. The local interest of the Central District of California in deciding the case in the home district of most of the defendants, however, favors transfer to that district for the exact reasons this Court articulated in *Rizvi*.

*Rizvi* involved very similar facts to this case. The alleged securities fraud was based in Los Angeles, but the SEC filed the case in Sherman. Here, the SEC is alleging that a continuing scheme involving fifteen companies was directed by Thomas and Elizabeth Coldicutt, who lived and worked in Rancho Mirage, California at all times relevant to the Complaint. Of the fifteen companies that the SEC has alleged were part of the scheme, eleven were based in the Los Angeles, Palm Springs, and San Diego area. In *Rizvi*, three of 176 investors lived in the Eastern District of Texas, a total of six in all of Texas, and 83 in Southern California. In this case, two of about 420 investors

live in the Eastern District of Texas, none elsewhere in Texas, 166 in Southern California and 193 in Tijuana. 9/

The Court's conclusion in Rizvi weighing the local interest factor in favor of the Defendant is, a fortiori, applicable here:

> Three people residing in this District, and another three residing in the State of Texas, invested on the basis of Defendants' fraudulent offering of securities. However, the Central District of California also has a substantial interest in policing the conduct of businesses that operate within its jurisdiction, and nearly half of all the investors reside in or near the Central District of California. Although this Court found that venue was proper in the Eastern District of Texas pursuant to Defendants' contacts with investors in this District, Defendants' Motion to Transfer Venue pursuant to § 1404(a) is based upon the convenience of the parties and witnesses, and the interests of justice. Here, the Court is of the opinion that the Central District of California has a stronger interest in presiding over this controversy because Defendants reside in that district and nearly half of all the investors reside in or near that district.

*Rizvi, supra*, * 33-34. Whatever the interest of the Eastern District of Texas in presiding over this controversy based on the presence of two investors, it is far outweighed by that of the Central District of California, where the alleged scheme was plotted according to the SEC, where four of the six defendants live (the other two living in the Southern District of California), and where by far the largest group of U.S. investors live.

This factor weighs strongly in favor of transfer.

III. CONCLUSION

The Defendants have carried their burden in making a Section 1404(a) motion to show good cause for a transfer and that the preferred venue of Los Angeles is "clearly move convenient." *Volkswagen, supra*, 545 F.3d at 315. With regard to the first three private convenience factors, location of the evidence, process for witnesses, and

---

9/ See breakdown in Exhibit 1 to Coldicutt Declaration.

convenience for voluntary witnesses, there is simply not a detectable weight on the SEC's side of the scale. On the fourth private convenience factor, the burden to a government agency with an office in Los Angeles in litigating in the Central District of California is minimal compared to the burden on the Defendants in being forced to defend in the Eastern District of Texas, where nothing significant to the lawsuit occurred. Finally, the sole public convenience factor, the local interest of the court in deciding a matter, clearly favors the Defendants. Everything of significance in this case occurred in California, where all of the Defendants and most of the U.S. investors reside. For these reasons, we respectfully urge the Court to enter an order transferring this case to the Central District of California, Los Angeles Division.

                                            Respectfully submitted,

                                            /s/ John Courtade
                                            John Courtade
                                            Texas Bar No. 04891200
                                            4408 Spicewood Springs Road
                                            Austin, Texas 78759
                                            tel. 512-502-1135
                                            fax: 512-502-1138
                                            e-mail: johncourtade@johncourtade.com
                                            Attorney-in-charge for Defendants

Dated: October 19, 2012

## **CERTIFICATE OF CONFERENCE**

I certify that I and my co-counsel have met and conferred with the SEC's counsel in compliance with Local Rule CV-7(h) in connection with this motion to transfer, which the SEC opposes. My co-counsel, Irving M. Einhorn, Esq., raised the issue with Jessica Magee, Esq., the SEC's lead attorney, by telephone on August 15, 2012, as to whether the SEC would agree to transfer venue to Los Angeles for the convenience of the parties and witnesses. I raised the issue with her again in a telephone conversation on September 27, 2012, stating that we were prepared to make a motion to transfer the case to Los Angeles and generally describing the grounds. She stated that the SEC did not agree and believed that the case law supported keeping the case in Sherman. Accordingly, we have reached an impasse requiring resolution by this Court.


                                    /s/ John Courtade
                                    John Courtade

## CERTIFICATE OF SERVICE

I hereby certify that on October 19, 2012, I caused:

1.  Defendants' Motion and Memorandum in Support of Motion to Transfer Venue in the Interests of Justice Under 28 U.S.C. § 1404(a);

2.  Supporting Declaration of John Courtade;

3.  Supporting Declaration of Irving M. Einhorn;

4.  Supporting Declaration of Elizabeth L. Coldicutt;

5.  Supporting Declaration of Susana Gomez; and

6.  Proposed Order Transferring Venue

to be served on counsel for all parties by filing a copy of this motion with the Clerk for the U.S. District Court, Eastern District of Texas, through the ECF filing system

       /s/ John Courtade  
       John Courtade