UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | |
|---|---|
| SECURITIES EXCHANGE COMMISSION | Civ. No. 4:12-CV-00505 |
| Plaintiff, | |
| v. | |
| THOMAS D. COLDICUTT, JR., et al. | |
| Defendants. | |

DEFENDANTS' REPLY MEMORANDUM IN SUPPORT OF MOTION TO TRANSFER VENUE IN THE INTERESTS OF JUSTICE UNDER 28 U.S.C. § 1404(a)

The SEC's response to the Defendants' Motion to Transfer Venue emphasizes primarily two points. First, it has transformed one of the transfer agents into a leading man in this drama, possibly the most remarkable elevation of a very minor actor since Rosencrantz and Guildenstern starred in their own Broadway play. Second, it has emphasized inconvenience to the SEC staff.

1. The Insignificance of the Transfer Agent

The transfer agent, Signature Stock Transfer ("SST"), is so unimportant in these events that the SEC mentioned "single most significant witness in the case" aside from the Defendants (according to the SEC, SEC Opposition Brief p. 6), precisely once in its 26 page, 119 paragraph complaint. In paragraph 8, it refers to SST's presence in Plano as the basis for venue in this district. 1/ In its allegations of a sweeping scheme involving 15 public companies which the SEC details in a lengthy complaint, SST is completely absent. There is no mention in the complaint of SST "review[ing] opinion

---

1/ There is a second generic four word reference to one of the Defendants, Linda Farrell, communicating with transfer agents in paragraph 57, but Signature Stock is not specifically singled out from the various transfer agents involved.

letters, remov[ing] restrictive legends from stock certificates," etc. because there are no securities registration violations alleged in this case and no indication in the complaint that SST was ever involved in processing any unlegended or restricted shares during the time that any of the family, friends, or friends of friends of the Coldicutts were involved in these companies.  The SEC is complaining about the sale of **registered** shares, not unregistered shares.

The Declaration of Jason M. Bogutski, which is the basis for this remarkable inflation of his importance to this case, provides a recitation of the various administrative functions that a transfer agent can perform, but he doesn't suggest a single instance of what connection any such administrative function has with the allegations of wrongdoing in this case.  Bogutski Declaration ¶¶ 6-7.  In short, it is difficult to imagine what Mr. Bogutski would say as a witness that would not be stipulated to, e.g., that certain lists of shareholders who purchased in the IPO are authentic and that Signature Stock caused certificates to be issued in the names of those persons.  2/  The SEC pointedly makes no proffer of what he would testify to in connection with any of the ten companies for which Signature acted as a transfer agent and how that testimony relates to any issue in the case lest the insignificance of his testimony be made even clearer.

In the highly unlikely event that Mr. Bogutski were a witness at a trial in California, he fails to explain why he would not be compensated for travel expenses by the government under 28 U.S.C. § 1821, Bogutski Declaration ¶ 11, or why his absence from his business for a day or two would paralyze it when most of its functions are clerical.  Nor does the SEC suggest why any inconvenience to Mr. Bogutski for a day or

---

2/   In light of the SEC's objections, Elizabeth Coldicutt is concurrently submitting by supplemental declaration lists for the companies that are the basis of her calculations of where the investors lived.  A majority are certified by Signature.  There's no dispute about the identifies of the shareholders of which we're aware.

two would outweigh the inconvenience of all six defendants coming to Sherman for several weeks and every other non-party witness in the case who could be compelled or would appear voluntarily having to travel there.

If the actions of Jason Bogutski have no significance to the issues of this case, the SEC's argument about his father, Robert Bogutski is purest innuendo and mud-throwing, devoid of any factual basis or relevance.  Its argument is: (1) that Tom Coldicutt knew Robert Bogutski some time in the past; (2) that Bogutski was enjoined in 1998 from transfer agent violations in an SEC case completely unrelated to the Defendants; and (3) that the SEC wrote a letter in 2011 to Robert Bogutski that it had "concerns" he might be associating with SST, as if such inadmissible self-serving hearsay about SEC "concerns" was evidence of anything.  3/ It then leaps to the conclusion that "[t]hese facts illustrate that SST is a critical witness," but what it is a critical witness about is left entirely to hyperactive imaginations.  There's no suggestion in the complaint.  Robert Bogutski didn't submit a declaration, and Jason Bogutski's declaration makes no mention of any contacts between his father and Tom Coldicutt, let alone any mention of some scheme involving his father and/or Tom Coldicutt.  In fact, Tom Coldicutt never met Robert Bogutski, never did any business with him, and last spoke to him about 1995.  [Declaration of Thomas Coldicutt].

Finally, the SEC's suggestion that this issue of venue based on a transfer agent has been litigated in two other cases, *SEC v. 2DoTrade, Inc.*, Case No. 3:03-CV-2246 (N.D. Tex.) and *SEC v. Shaber*, Case No. 3:03-CV-2247 (N.D. Tex.), is misleading.  The courts in those cases never ruled on any venue issue, and the cases were not even

---

3/   The SEC even attaches as Exhibit 6 to the Magee Declaration a recent SEC complaint against another company for which SST was a transfer agent although it is not a even a defendant in that case.  Perhaps this is useful for threatening Jason Bogutski and SST, but it has no connection with any issue in this case.

litigated in any meaningful sense.  The SEC obtained consent judgments.  See the Supplemental Declaration of John Courtade.

    2.    <u>Other factors</u>

<u>Inconvenience to other witnesses</u>.  While the SEC wildly exaggerates the importance of the transfer agent, it casually dismisses the importance of all the real non-party witnesses on the issues material to the case, arguing that their testimony has "little relevance and should provide little weight" in determining this motion.  SEC Opposition p. 7.  The SEC has alleged that Tom and Elizabeth Coldicutt controlled 15 public companies which were formed solely for the purposes of selling the shells and that the principals, who were simply nominees, never had any bona fide business intention to find gold or other commercially viable minerals.  If the SEC cannot show that the reality of control and that there was no bona fide business aspect to the companies, its case evaporates.  To argue that the third-party witnesses with the most direct knowledge on these issues are of "of little consequence," 4/ turns this case on its head.

<u>Court congestion.</u>  The tables from the Administrative Office of the United States Court attached by the SEC to the Magee Declaration appear to show exactly the opposite of what the SEC is contending.  The Central District of California, while it has five times as many cases as the Eastern District of Texas, consistently moves the cases faster at every stage, presumably because it has a much larger number of judges but also possibly because of the nature of the dockets.  The Eastern District of Texas, for example, is known to have a lot of patent cases.  In any event, the statistics the SEC cites show that median age of the case is substantially less at every stage of the

---

4/    Most of these witnesses "of little consequence" also received Wells notices from the SEC staff, advising them that the staff was recommending that the SEC sue them as part of the conspiracy it alleges.  The staff subsequently pared back nine of them and only sued four persons associated with these 15 companies: Bob Weaver, Christopher Greenwood, Linda Farrell, and Susana Gomez.

proceedings in the Central District of California and that it's taking about 33% to 50% longer for the cases to work their way through the various pretrial stages and trial in the Eastern District of Texas. 5/ By definition, dockets are not more congested if they're moving faster. The Defendants retract their earlier assumption that this factor is neutral. It clearly favors a transfer to Los Angeles.

Interest of This District in the Matter. The SEC's argument that these companies somehow "targeted" this district by using SST is a figment of its imagination. 6/ Tom Coldicutt has stated in his declaration that when a small issuer asked him for a recommendation on a transfer agent, he gave it the names of transfer agents he knew to be interested in doing business with small issuers, including SST but also other transfer agents. Five of these companies named by the SEC used other transfer agents.

Physical presence of documents. While the physical presence of documents is less important that it once was, whatever documents the SEC has gathered in the course of its investigation have presumably been scanned and are available to be produced electronically, and the Defendants will do the same, either uploading them over the internet or sending CD's to the opposing party. To the extent there are any documents which have not yet been produced and scanned, those are most likely in California. Any documents of Tom and Elizabeth Coldicutt, who asserted the Fifth Amendment in the investigation but have since waived it, are there. Also, any documents from companies and professionals which the Defendants might seek in their

---

5/ Per Exhibit 7 to the Magee Declaration, the median case age in months is as follows:

|  | overall | no court action | ≤ pretrial | >pretrial | trial |
|---|---|---|---|---|---|
| E.D. Tex. | 8.6 | 6.9 | 8.7 | 23.9 | 26.1 |
| C.D. Cal. | 5.6 | 4.8 | 5.9 | 16.1 | 20.1 |

6/ The Magee Declaration should be entirely disregarded on this point. It claims there are numerous transfer agents in California but doesn't identify a single one or give any basis to believe any of them were in business from 2006 to 2010.

defense are most likely where the companies conducted business, in California.

<u>Burden on defendants.</u>  Ms. Gomez' sworn statement about the financial and family burden on her of having to defend this case in Sherman is perfectly competent evidence.  There is no requirement that she submit extensive documentary evidence, particularly when no reasonable person would question such a burden on the owner of a housecleaning service employing a few relatives.

<u>Burden on attorneys</u>.  Contrary to the SEC's characterization, the parties are not in different states.  The SEC is in California as well as numerous other states.  The SEC's attorneys and the Defendants are in different states.  One of the Defendants' two attorneys, Irving M. Einhorn, is in Los Angeles.  He has not appeared yet but will make a pro hac vice application if the case is not transferred.  It's clearly more convenient for him to be in California and involves much less expense to the Defendants.  Their other attorney, John Courtade, is in Austin.  Contrary to the SEC's characterization, it is no more or less inconvenient for him to fly to Los Angeles or drive to Sherman.

It is doubtless more convenient for the two SEC attorneys who have appeared, Ms. Magee and Mr. Galloway, to keep the case in Fort Worth.  The other SEC staffers who submitted declarations, Mr. Zadina and Mr. Werner, who were involved in the investigation, have stated in essence that they'll continue to be available to answer questions while the case is litigated.  Most of the SEC staff's work during the course of the litigation before trial will be done in Fort Worth regardless of where the trial is held.  If there are depositions, they will need to attend the depositions wherever they take place.  None of them are likely to be in Fort Worth.  Should the case be transferred to Los Angeles, the only time before trial their attendance at court would likely be required would be in connection with an important disputed motion.  Most courts permit telephonic participation in status conferences and routine matters.

As far as the argument that a trial in Los Angeles will interfere with all of their other duties, Gallagher Declaration ¶ 7, Zadina Declaration ¶ 10, Werner Declaration ¶ 9, Defendants' counsel can only observe that, based on about 75 years of combined experience, including several decades of SEC trial experience, few attorneys are attending to other significant duties during the course of a trial other than possibly returning a telephone call at lunch or at night.

Finally, the financial burden based on where this trial takes place will fall almost entirely on the Defendants and the witnesses should it be kept in Sherman. It is not only the cost of their travel and the costs of their attorney's travel but also the cost of their requiring attendance of any witnesses who would have to travel to Texas. They would be required to pay the airfare and food and lodging experience for any witness subpoenaed from California, who would necessarily be staying overnight. See 28 U.S.C. § 1821. Ms. Gomez has already set forth the burden on her at length in her declaration. There is no burden on the government should it be transferred to Los Angeles. The SEC's attorneys are salaried employees, and the "limited budget" to which Mr. Galloway refers, Galloway Declaration ¶ 6, was $1,321,000,000 for fiscal 2012. It's seeking $1,566,000,000 this year. 7/ Moving this trial to Los Angeles will not materially affect it. In fact, given the reduced costs of requiring attendance in Los Angles by any California witnesses, the government might substantially offset the minimal costs of sending two or three people to try the case.

<u>The Defendants Oppose Venue Related Discovery</u>

While discovery on facts relating to venue might be appropriate in some cases, the SEC conducted an extensive two year investigation prior to filing this lawsuit. It

---

7/ Testimony of Mary Schapiro before a Congressional subcommittee, March 6, 2012, http://www.sec.gov/news/testimony/2012/ts030612mls.htm

already knows where the witnesses are and every other fact relevant to a venue transfer motion. The Zadina Declaration describes the 80 subpoenas it served, copious documents it obtained, and numerous witnesses it deposed or interviewed. Zadina Declaration ¶ 5. The Defendants oppose this motion.

    3.    <u>Conclusion</u>

Although the choice of venue is a balancing test, the convenience of witnesses is the most important factor. The Defendants could not agree more strongly with the SEC that "it is not the number of witnesses that determines the appropriateness of a transfer, but the materiality of the anticipated testimony." SEC Opposition p. 8. The convenience of all important witnesses, both the Defendants and non-parties, militates in favor of Los Angeles as the preferred venue. The only reason to even call Mr. Bogutski, one of three transfer agents involved, as a witness would be a very weak attempt to justify venue in Sherman. Accordingly, we respectfully move that the Court transfer this case to the Central District of California.

    Respectfully submitted,

    /s/ John Courtade
    John Courtade
    Texas Bar No. 04891200
    4408 Spicewood Springs Road
    Austin, Texas 78759
    tel. 512-502-1135
    fax: 512-502-1138
    e-mail: johncourtade@johncourtade.com
    Attorney-in-charge for Defendants

Dated: November 12, 2012

## **CERTIFICATE OF SERVICE**

I hereby certify that on November 12, 2012, I caused the following documents:

1. Defendants' Reply Memorandum in Support of Motion To Transfer Venue in the Interests of Justice Under 28 U.S.C. § 1404(a)

2. Supplemental Declaration of John Courtade in Support of Defendants' Motion to Transfer Venue

3. Declaration of Thomas D. Coldicutt, Jr., in Support of Defendants' Motion to Transfer Venue

4. Supplemental Declaration of Elizabeth L. Coldicutt in Support of Defendants' Motion to Transfer Venue

5. Defendants' Objections to SEC Declarations in Opposition to Motion for Change of Venue;

6. Unopposed Motion to Extend Defendants' Page Limits for Reply Memorandum; and

7. Proposed Order Granting Defendants' Motion to Extend Page Limits

to be served on counsel for all parties by filing a copy of this motion with the Clerk for the U.S. District Court, Eastern District of Texas, through the ECF filing system.

    /s/ John Courtade  
    John Courtade